641 A.2d 648

OMNIVEST

v.

**STEWARTSTOWN BOROUGH ZONING HEARING BOARD**

**Appeal of STEWARTSTOWN BOROUGH, Appellant.**

Commonwealth Court of Pennsylvania.

Submitted April 13, 1994.

Decided April 15, 1994.

Petition for Allowance of Appeal Denied Aug. 29, 1994.

Barbara Orsburn Stump, for appellant.

Timothy P. Ruth, for appellee.

Before CRAIG, President Judge, and DOYLE, McGINLEY, PELLEGRINI, FRIEDMAN, KELLEY and NEWMAN, JJ.

FRIEDMAN, Judge.

Stewartstown Borough (Borough) appeals from an order of the Court of Common Pleas of York County which reversed a decision of the Stewartstown Borough Zoning Hearing Board (Board) denying Omnivest's request for a variance.

Omnivest is the equitable owner of a 1.564 acre parcel of land which does not conform to the zoning requirements for the apartment use which Omnivest seeks to build on the site. Apartment use is permitted by special exception in the Residential Town zone where this property is located provided the

property is at least 100 feet in width at the right-of-way line [1] and 150 feet in width at the front setback line.[2] The Omnivest parcel is only 55 feet wide at the right-of-way line, although it later widens so that the buildable portion of the property is approximately 200 feet wide.[3]

The history of this case follows. On February 26, 1980, the zoning hearing board had granted both a special permit for the construction of 8 multi-family dwelling units and a variance from the 150 foot frontage requirement at the setback line.[4] On April 7, 1980, the Stewartstown Borough Council approved the subdivision plan creating the Omnivest parcel and the subdivision plan was recorded on April 18, 1980.[5]

After subdivision, Lot # 1, which contained an existing house, was to have a frontage of 60 feet, and Lot # 2, which is the subject of the present proceeding, a frontage of 55 feet. The proposed multi-family dwellings were not constructed, and the variance expired because the applicant failed to obtain a building permit or use certificate within six (6) months from

1. For single family residential uses with public water and public sewer facilities, the zoning ordinance requires a minimum width of 60 feet at the right-of-way line, less than that required for multi-family dwellings with public water and public sewer facilities.

2. The zoning ordinance requires a building setback of at least 30 feet from the street on which the property fronts. R.R. at 30a. The parcel in question is only 55 feet wide at this point. However, in an opinion dated December 8, 1989, the trial court ruled that the setback width requirement applies at the actual building line, rather than at the minimum setback line. R.R. at 46a. This interpretation of the zoning ordinance is not appealed and is not before us.

3. A 55 foot wide rectangular corridor, or panhandle, extends from the street to the rear of the neighboring properties at which point the Omnivest parcel widens.

4. In the application for the variance and special permit, applicant did not seek a variance from the 100 foot minimum width requirement at the right-of-way line.

5. Stipulation of Counsel, approved and made a part of Record by Order dated December 14, 1993.

It appears that the subdivision, special permit and variance were part of a package permitting the owner to develop apartment units on part of the property by creating two lots, one retaining the original single family house and the other to contain the apartment units.

the date of authorization of the variance as required by section 802a of the Zoning Ordinance of Stewartstown Borough.

In December 1988, Omnivest entered into a sales agreement with the legal owner of this property. Thus begins a long history of applications and appeals. First, Omnivest apparently applied for a special permit to build apartments on the site. The Board's denial of a special permit was reversed by the trial court in 1989, when the trial court ruled that the width requirement at the setback line [6] could be met by building where the property was wide enough. Then, in 1991, Omnivest sought a variance from the right-of-way frontage requirement of 100 feet at the right-of-way line, which the Board denied on the basis that the problem was self-created, was not the minimum variance that would afford relief and that the hardship was financial in nature. The Board also concluded that the earlier variance was from the ordinance provision requiring a 150 foot width at the building setback line and not from the provision requiring a minimum frontage of 100 feet at the right-of-way line. The trial court determined that, absent change of circumstances, the Board was bound by its 1980 decision granting the variance and dismissed the Board's conclusion that the 1980 variance did not pertain to the frontage at the right-of-way line stating, "the clear import of the prior decision is that it was permissible to build the apartment units under *all* of the provisions of the Ordinance." (R.R. at 26a.) The trial court remanded to the Board for a determination of whether a change of circumstances had occurred since the grant of the 1980 variance.

On remand, the Board did not find a change of circumstances but stated that, pursuant to *In re Appeal of Newtown Racquetball Associates from the Newtown Township Zoning Hearing Board,* 76 Pa.Commonwealth Ct. 238, 464 A.2d 576 (1983), the renewed variance could also be denied if the grant of the first variance was improper or illegal, determined that

6. The Board had denied the special exception because the property was not sufficiently wide at the 30′ minimum setback line.

the first grant was improper [7] and, therefore, again denied the variance.[8]

The trial court reversed distinguishing *Newtown Racquetball* because, there, no changes had been made in reliance on the variance whereas, here, the approval of the variance had resulted in a change of position, vesting

> the right to use the land in the manner approved by the Board. The landowner's recording of the approved subdivision plan created a lot that could not be used in any manner in conformance with frontage requirements. Therefore, it is too late for the Board to change its mind, absent any change of circumstances.

(Trial court op. of Nov. 30, 1992 at 6.) The court also stated that because the 1980 variance was never appealed there is no transcript of the proceedings making it impossible to now determine whether the 1980 ruling was improper.

Omnivest relies on what Ryan [9] has termed an offensive use of res judicata argument.[10] In *Grace Building Co. v. Hatfield*

---

**7.** In support of the conclusion that the first variance was improperly granted, the zoning hearing board quoted the trial court's opinion of Nov. 8, 1991:

> If the prior variance is ignored, it is clear that the board is correct in denying a variance. The problem with the lot is self-created since the owner of the land subdivided it to its present configuration. The proposed variance is also not the minimum necessary to use the lot, and the hardship is primarily financial in nature.

> R.R. at 25a; R.R. at 29a.

**8.** This denial was beyond the scope of the remand since the trial court had specifically remanded for the Board to make a finding on whether there had been any change of circumstances since the grant of the 1980 variance.

**9.** Ryan, *Pennsylvania Zoning Law and Practice*, § 9.4.17.

**10.** Omnivest agrees with the trial court that reliance is sufficient to overcome the *Newtown* rule, but also argues that it is entitled to the variance to build the proposed multi-family units because the parcel created by the 1980 subdivision does not meet the zoning ordinance's frontage requirement. This argument is without merit because any variance based upon a new allegation of hardship would be subject to the requirement that the variance be the minimum necessary to afford relief. Section 910.2 of the MPC, 53 P.S. § 10910.2. In this case, a single family residence could be built on the property with only a 5 foot variance from the frontage requirement.

*Township,* 16 Pa.Commonwealth Ct. 530, 329 A.2d 925 (1974) and *Davies v. Zoning Hearing Board of Ross Township,* 61 Pa.Commonwealth Ct. 594, 435 A.2d 276 (1981), we held that a zoning hearing board abuses its discretion if it denies a second variance after expiration of an earlier variance if there is no substantial showing of a change of circumstances, *Grace Building Co.,* or relevant new evidence that the variance is no longer warranted, *Grace Building Co.* and *Davies.*[11] The Board, on the other hand, relies on our more recent decision in *Newtown Racquetball.* In *Newtown Racquetball* we held that because the applicant failed to prove a legal hardship,[12] an earlier variance had been improperly granted, and we refused to allow an improperly granted first variance to compel or validate a second grant.

The question before us on appeal,[13] is whether the grant of a variance which later expired is binding on the Board.[14]

11. In *Grace Building Co.* we said:

Having once found that a hardship existed and having once granted a variance for the subject parcel, it was an arbitrary and capricious abuse of discretion for the Board to refuse the second application in the absence of new findings based upon relevant new evidence that the variance was no longer warranted.
*Id.,* 16 Pa.Cmwlth. at 532, 329 A.2d at 927.

12. An applicant for a variance must prove that the provisions of the zoning ordinance inflict unnecessary hardship on the applicant and that the proposed use is not contrary to the public interest. Unnecessary hardship is demonstrated by showing that the physical characteristics of the property are such that there is no possibility of development in conformance with the zoning ordinance. In addition, the hardship must not be self-inflicted. The variance, if granted, must be the minimum necessary to enable reasonable use of property and the hardship must not be principally financial in nature. Section 910.2 of the Pennsylvania Municipalities Planning Code, Act of July 31, 1968, P.L. 805, *as amended,* (MPC), 53 P.S. § 10910.2.

13. Our scope of review on appeal, where the lower court took no additional evidence, is limited to determining whether the zoning hearing board committed a manifest abuse of discretion or an error of law. *Valley View Civic Association v. Zoning Board of Adjustment,* 501 Pa. 550, 462 A.2d 637 (1983).

14. Because of our resolution of this case we do not reach the issue of whether the variance as originally granted included a variance from the minimum property width at the right-of-way line.

■ First, we reject the notion that vested rights analysis is applicable.[15] Vested rights "is a judicial construct designed to provide individual relief in zoning cases involving egregious statutory or bureaucratic inequities. In part it involves the equitable concept of detrimental reliance." *Highland Park Community Club v. Zoning Board of Adjustment,* 509 Pa. 605, 612, 506 A.2d 887, 891 (1986). Here, not only were there no "egregious statutory or bureaucratic inequities," but in addition the zoning ordinance clearly establishes that the variance expired if not acted upon in a specified manner within a specified period of time.[16]

Second, our review of *Grace Building Co., Davies* and *Newtown Racquetball* convinces us that the present state of the law is inconsistent and confusing. In discussing these cases, Ryan has commented: "It remains to be seen whether the distinction which the Court made between the *Newtown Racquetball* and *Grace Building Co.* cases will prove comfortable." Ryan, *Pennsylvania Zoning Law and Practice,* § 9.4.17 supplement. We now determine that the distinction has not proved comfortable and that *Grace Building Co.* must be overruled.

■ In *Newtown Racquetball,* we attempted to distinguish *Grace Building Co.* by saying that in *Grace Building Co.*

15. The vested rights concept is applicable in a number of land use situations. It is found in the "variance by estoppel" cases where a landowner claims reliance on a municipality's long continued acquiescence in a use which does not comply with the zoning code. *See, e.g., In re Appeal of Crawford,* 110 Pa.Commonwealth Ct. 51, 531 A.2d 865 (1987), *appeal denied,* 518 Pa. 656, 544 A.2d 1343 (1988); it is also used to determine whether a landowner has a right to develop in accordance with a prior zoning classification, *In re Appeal of Langmaid Lane Homeowners Association,* 77 Pa.Commonwealth Ct. 53, 465 A.2d 72, n. 7 (1983), or to determine whether an applicant has acquired a vested right in an improperly issued building permit. *Petrosky v. Zoning Hearing Board of the Township of Upper Chichester,* 485 Pa. 501, 402 A.2d 1385 (1979).

16. Section 802a of the ordinance provides, in pertinent part:

Unless otherwise specified or extended by the Board, a variance authorized by it expires if the applicant fails to obtain a building or use certificate within six (6) months from the date of authorization of the variance.

R.R. at 32a.

there was nothing to show that the *already-demonstrated* legal hardship did not continue to exist [whereas in *Newtown Racquetball* ] the only assertion of hardship ever advanced by the Bank, *in either of its variance applications*, was ... a claim of economic hardship [which] does not constitute an unnecessary or legal hardship as to warrant the granting of a variance.

*Newtown Racquetball*, 76 Pa.Commonwealth Ct. at 245, 464 A.2d at 580 (emphases in original). An applicant for a variance bears the burden of proving that unnecessary hardship will result if the variance is denied and that the variance will not be contrary to the public interest. *Valley View Civic Association v. Zoning Board of Adjustment*, 501 Pa. 550, 462 A.2d 637 (1983). Yet, if a since-expired variance had *ever* been granted for the property, *Grace Building Co.* would remove the burden of proof from the applicant in all subsequent applications which request the same variance.

In theory, the concept of res judicata underlies *Grace Building Co. See, e.g.,* Ryan § 9.4.17, and *Newtown Racquetball.* However, application of res judicata in expired variance cases is contrary to the rule that res judicata be applied sparingly in zoning matters. *City of Pittsburgh v. Zoning Board of Adjustment,* 522 Pa. 44, 559 A.2d 896 (1989). This is particularly true because each variance application and case is typically "dealt with anew and apart." *Heller v. Zoning Board of Adjustment,* 404 Pa. 8, 11, 171 A.2d 44, 46 (1961). Here, the grant of the 1980 variance was conditioned upon the applicant acquiring a building or use permit within six months. When the applicant failed to exercise its rights by acquiring a building permit, the variance expired.[17] Therefore, any subse-

17. In addition, the record here contains no evidence that the specific variance requested in 1991 was the same as the variance granted by the Board in 1980, nor does it contain evidence that the issue of unnecessary hardship was actually litigated in 1980. Here, the Board which granted the expired 1980 variance made no findings and reached no conclusions concerning the existence of unnecessary hardship. Yet, applying *Grace Building Co.,* the trial court would bind the Board. We do not believe that the existence of this ambiguous zoning hearing board decision should compel the grant of a subsequent variance more than eight years later.

quent variance application, even one seeking the same variance for the same parcel of land, is a new application and the applicant must prove all elements necessary to the variance. To hold otherwise would negate the ordinance provisions limiting the duration of the variance authorization and would create confusion in zoning matters involving expired variances.

■ Thus, we conclude that *Grace Building Co.* was improperly decided and must be overruled. We now hold that a zoning hearing board *does not* abuse its discretion if it denies a second variance after expiration of an earlier variance. Therefore, Omnivest cannot use the Board's grant of the expired 1980 variance to compel the grant of a new variance.

Accordingly, we overrule *Grace Building Co.*, and we reverse.

## ORDER

AND NOW, this 15th day of April, 1994, the order of the Court of Common Pleas of York County, dated November 30, 1992, is reversed.